## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NATALIE THRASHER,**

        **Petitioner,**

**vs.**                          **No. CIV-09-231 MV/WDS**

**ARLENE HICKSON, Warden, and**
**Gary K. King, Attorney General for the**
**State of New Mexico,**

        **Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

        **THIS MATTER** comes before the Court on Petitioner Natalie Thrasher's ("Petitioner")

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody

with accompanying Exhibits filed March 6, 2009 [Doc. 1]; Arlene Hickson, Warden, and Gary K.

King, Attorney General for the State of New Mexico's ("Respondents") Answer with accompanying

Exhibits filed May 29, 2009 [Doc. 9]; Respondent's Motion to Dismiss Petition (28 U.S.C. § 2254

Proceeding) with Memorandum Brief filed July 19, 2010 [Doc. 18, 19]; and Petitioner's Answer to

Respondents' Memorandum filed August 16, 2010 [Doc. 20]**.** Respondents did not reply. Having

considered the Petition and accompanying exhibits, the Answer with accompanying exhibits, the

Motion to Dismiss Petition, and the Answer to Respondents' Memorandum, this Court recommends

that Respondent's Motion to Dismiss be granted and that the Petition for Writ of Habeas Corpus be

denied on the merits and dismissed with prejudice. Because the issues are resolved on the pleadings

and the record establishes conclusively that Petitioner is not entitled to relief, an evidentiary hearing

is not necessary. *See Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999).

## CLAIMS

As grounds for federal habeas review, Petitioner raises the following five claims: abuse of discretion by the trial court in not granting an evidentiary hearing on Petitioner's state habeas petition; violation of Petitioner's right to a fair trial by not allowing defense witnesses to testify; trial court's error in denying a motion for a mistrial; prosecutorial misconduct; and ineffective assistance of counsel.  In their Answer, Respondents admit that Petitioner has exhausted these claims in state court. [Doc. 9].

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2005, officers of the Albuquerque Police Department ("APD") caused a confidential informant to enter Petitioner's apartment and make a "controlled buy" of illegal drugs which proved to be crack cocaine. RP 120. As a result of this transaction, the officers obtained a search warrant on April 20, 2005. *Id.*  On April 27, 2005, Albuquerque police officers searched Petitioner's residence pursuant to the warrant.  *Id.* Petitioner, who was present, admitted that she had drugs in her purse, which she later stipulated was 6.3 grams of crack cocaine. *Id.* Officers also found $516.00 cash in Petitioner's purse and $1,500.00 cash in a jacket pocket in Petitioner's bedroom closet. *Id.* at 120, 121.  Some of the money was in the form of a "drug wallet."[1] Tr. 111, 192, 196. The money was returned to Petitioner prior to trial. Tr. 169. No drug paraphernalia was found during the search. Tr. 194.

Prior to trial, Petitioner filed a Motion in Limine designed to prevent the State's witnesses from testifying concerning the April 17, 2005 controlled cocaine buy. RP 121. The Court granted this Motion. *Id.* Despite the Court's ruling, as discussed in detail, *infra,* testimony was given

---

[1]A "drug wallet" is bills folded in half and separated into increments, usually $100. Tr. 111.

regarding a controlled buy. Tr. 153. Petitioner also attempted to call witnesses who were former crack addicts to testify that the amount of cocaine found at Petitioner's residence was consistent with personal use. Tr. 8-9. The Court did not allow these witnesses to testify. Tr. 210-211.

Petitioner went to trial and was found guilty by a jury in the Second Judicial District, Bernalillo County, District Court, Cause No. CR-2005-3027 of one count of Trafficking by possession with intent to distribute (cocaine), a first-degree felony. RP 66. Petitioner was sentenced on May 24, 2006 to a total term of eighteen (18) years followed by two (2) years of parole. RP 104. Petitioner is currently in custody of Respondent Arlene Hickson, Warden, pursuant to the conviction and sentence. [Doc. 9]

Petitioner filed a notice of appeal on June 6, 2006 to the New Mexico State Court of Appeals, [Doc. 9, Exh. B], and the conviction was affirmed by Memorandum Opinion on November 20, 2007. [Doc. 9, Exh. J].  A Petition for Writ of Certiorari to the New Mexico Supreme Court was filed on November 27, 2007, [Doc. 9, Exh. K], which was denied on January 4, 2008. [Doc. 9, Exh. L]. Petitioner filed her first Petition for Writ of Habeas Corpus in state court on June 24, 2008, [Doc. 9, Exh. N], which was denied on June 24, 2008. [Doc. 9, Exh. O]. Petitioner's Petition for Writ of Certiorari filed July 22, 2008, [Doc. 9, Exh. P], was denied on August 6, 2008. [Doc. 9, Exh. Q]. Petitioner filed a Motion for Reconsideration on October 3, 2008, [Doc. 9, Exh. R], which was denied on October 6, 2008, [Doc 9, Exh. S], and she filed a Motion to Amend Judgment and Sentence on November 21, 2008, (Doc. 9, Exh. T), which was denied on December 1, 2008. [Doc. 9, Exh. U]. Petitioner filed her second Petition for Writ of Habeas Corpus on March 6, 2009, [Doc. 9, Exh. V], which was denied on March 10, 2009. [Doc. 9, Exh. W]  On March 6, 2009, Petitioner filed her federal Petition for Writ of Habeas Corpus. [Doc. 1].

## STANDARD OF REVIEW

3

Because Petitioner is in custody pursuant to the judgment of a state court, the provisions of 28 U.S.C. §2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), govern this case.  Under AEDPA, relief shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the petitioner can establish that the State court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or "decides a case differently than the Court has on a set of materially indistinguishable facts." *Young v. Sirmons*, 486 F.3d 655, 662-63 (10th Cir. 2007) (quoting *Torres v. Lytle*, 461 F.3d 1303, 1311 (10th Cir. 2006)).

A state court decision is an "unreasonable application" of federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Torres,* 461 F.3d at 1311). "[A] federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)).  Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application was also objectively unreasonable.  *Id.*  In evaluating whether the state court's application of the law was reasonable, federal habeas courts may consider the decisions of the inferior federal courts. *Matteo v. Superintendent, SCO Albion*, 171 F.3d 877, 890 (3rd Cir. 1999) (citing *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir. 1998)).

4

Relief under the "unreasonable determination of the facts" clause of subsection (d)(2) is subject to the provisions of 28 U.S.C. § 2254(e)(1), which requires that factual findings of a state court are presumed correct and can be overturned by a habeas court only on a showing by the petitioner of clear and convincing evidence. *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008). If a state court resolves issues in a summary disposition with little or no legal reasoning, deference us still owed to the result. *See Sandoval v. Ulibarri,* 548 F.3d 902, 911 (10th Cir. 2008); *Paine v. Massie,* 339 F.3d 1194, 1198 (10th Cir. 2003).

## ANALYSIS

<u>Claim One: Abuse of discretion by the trial court in not granting an evidentiary hearing on Petitioner's state habeas petition.</u>

Petitioner alleges that the trial judge abused his discretion by not granting her an evidentiary hearing on her Petition for Writ of Habeas Corpus.[2] In order to be granted relief for the state court's alleged abuse of discretion, Petitioner must show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A federal habeas court is not to re-examine determinations made by state courts on state law questions. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (citations omitted). Rather, a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.*; *see Shipley v. State of Oklahoma,* 313 F.3d 1249, 1251 (10th Cir. 2002) ("[f]ederal habeas review

---

[2]Petitioner filed two Petitions for Writ of Habeas Corpus. [Doc. 9, Exh. N, V]. The only Petition that Petitioner references in her submissions is her Petition filed June 24, 2008. However, even if Petitioner intended for both Petitions to be the subject of this claim, the result would be the same.

does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation....").

This Court finds that no cognizable federal constitutional claim is presented in Petitioner's second claim because Petitioner's claim predominately alleges a violation of state law, *i.e.,* NMRA Rule 5-802, which governs habeas corpus proceedings. *See generally Warren v. Gartman,* 297 Fed.Appx. 767, 769 (10th Cir. 2008); *Cooper v. Nelson,* 201 F.3d 447, 1999 WL 1243098 at \*1-2 (10th Cir. 1999) (unpublished) (affirming district court's conclusion that habeas petitioner's claim of error in denial of evidentiary hearing in post-conviction proceeding lacked constitutional grounds and did not amount to the denial of a federal right and was, therefore, not appropriate for habeas corpus relief). Such allegations of violations of state law cannot be a proper basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (quotation omitted).

This Court notes, however, that even if Petitioner raised a proper basis for federal habeas relief, her argument still fails. There is no entitlement to an evidentiary hearing under NMRA Rule 5-802. Under the Rule, the Court can order a summary dismissal of the petition if "it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief as a matter of law." NMRA Rule 5-802E(1). An evidentiary hearing is only to be considered if the court directs the respondent to file a response and then if it appears that an evidentiary hearing is not required, the court is to dispose of the petition without a hearing. NMRA Rule 5-802E(3). In the present case, the court summarily dismissed both writs thereby determining that no response or evidentiary hearing was required.[3] The state court followed its own

---

[3]Although the trial court did not specifically check the box indicating that the matter was summarily dismissed, because no response was filed and because the court ruled on the same

procedures and, therefore, did not violate due process by deciding the matter on the basis of the pleadings, exhibits, and prior proceedings in the case. *See Ellis v. Mullen,* 56 Fed.Appx. 858, 865 n. 6 (10th Cir. 2003) (where the Tenth Circuit held that the state court did not violate due process by declining to grant an evidentiary hearing because the court followed Oklahoma law when it decided the matter on the basis of the records and pleadings).

Petitioner makes no showing that the trial court's decisions resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Petitioner's claim fails and it should be dismissed.

Claim Two: Violation of Petitioner's right to a fair trial by not allowing defense witnesses to testify.

Petitioner claims that she was denied the right to a fair trial because the trial judge refused to allow certain witnesses to testify on her behalf. She also claims that the trial judge violated Rule 5-201 by allowing state witnesses to testify when their names were submitted only one week prior to trial, but the judge refused to allow her witnesses to testify when they were submitted three days prior to trial.

The main issue for the jury in this case was whether the 6.3 grams of crack cocaine in Petitioner's purse was for her personal use or for trafficking. Tr. 34, 99. The State expert witness, Detective Guevara, testified that 6.3 grams of crack cocaine was far above personal use quantity and that he has never seen a user possessing that amount in the hundreds of cases he has worked. Tr. 167, 171. Three days prior to trial, Petitioner submitted the name of two proposed witnesses who were ex-crack cocaine users who Petitioner's attorney stated would testify that "to have six grams

day the first Petition was filed and within four days of when the second Petition was filed, this Court can presume that the Petitions were summarily dismissed.

on hand for personal use is not at all unusual and does not amount to trafficking." Tr. 8-9.  The trial court ruled that the two witnesses were excluded because they were disclosed at the twelfth hour, because they did not qualify as experts, and because their own personal use and practice was not relevant to the case. Tr. 210-211.

This issue was appealed to the New Mexico Court of Appeals who concluded that the trial court did not abuse its discretion in excluding the testimony of these witnesses under the rules of evidence as experts, as lay witnesses, or on the basis of relevance.  RP 192-195. The New Mexico Court of Appeals also concluded that the trial court did not abuse its discretion in excluding the testimony on the basis of late disclosure because "given the totality of the evidence against Defendant, we conclude that allowing the testimony of one witness (the other had left) that she and her acquaintances regularly possessed large amounts of crack as mere users would not have changed the outcome of the case." RP 195-196.

The admissibility of evidence in a state criminal proceeding presents a matter of state law. *See generally Vigil v. Tansy,* 917 F.2d 1277, 1280 (10th Cir.1990). As discussed, *supra,* a federal habeas petitioner is entitled to relief only for alleged violations of federal rights, not for errors of state law.  *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991).  Also, generally speaking, an alleged state court's error regarding its own evidentiary rules is insufficient to grant habeas relief.  *Id.* at 72. Accordingly, this Court finds that the issue of whether or not the trial judge misapplied Rule 5-201 by allowing the State to have certain witnesses testify with one-week notice and not allowing Petitioner's witnesses to testify with three-days notice and whether or not the trial court improperly excluded the testimony under the New Mexico rules of evidence are solely matters of state law, not of constitutional dimension, and are, therefore, not grounds for habeas relief.

However, it is undisputed that "[t]he right to a fair trial is a fundamental liberty secured by

the Fourteenth Amendment," *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (citation omitted), and, accordingly, this Court must address whether the trial court's denial of the Petitioner's witnesses violated her right to a fair trial under federal law.  The Tenth Circuit has ruled that federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair that a denial of federal constitutional rights results." *Gilson v. Sirmons*, 520 F.3d 1196, 1242 (10th Cir. 2008) (internal quotation omitted).

_____As discussed, *supra*, the main issue for the jury was whether the crack cocaine was for Petitioner's personal use or for distribution.  The issue before this Court is whether the trial court's refusal to allow Petitioner's witnesses to testify that having six grams on hand for personal use was not unusual and does not amount to trafficking denied Petitioner a right to a fair trial.  This Court finds that it did not.  It is undisputed that $516 cash was found in Petitioner's purse and an additional $1,500 cash was found in a pocket of a jacket. Tr. 192, 193. Although there is some dispute as to whether it was the money in the purse or the money in the jacket that was in the form of a "drug wallet," it is undisputed that there was some money in the form of a drug wallet. Tr. 111, 192, 196. It is further undisputed that no drug paraphernalia was found at Petitioner's residence. Tr. 194. As discussed, *supra*, the State's expert testified that 6.3 grams of crack cocaine was far above personal use quantity and that he has never seen a user possessing that amount.  Tr. 167, 171. When asked for his opinion on the type of activity indicated by the amount of cocaine, the amount of money and the way it was folded, and the lack of paraphernalia, Detective Guevara stated that it indicated street-level drug trafficking. Tr. 170. Furthermore, defense counsel's offer of proof did not indicate that the proposed witnesses would testify regarding the cash and paraphernalia factors. Tr. 8-9.

Given the totality of this evidence together with the amount of crack cocaine in Petitioner's possession, the Court finds that the testimony of one or two witnesses that 6.3 grams of crack

cocaine can be for personal use and does not amount to trafficking could not overcome the overwhelming evidence against Petitioner and that the testimony would not have influenced the outcome of the trial. Under these circumstances, this Court finds that Petitioner's trial was not fundamentally unfair, and Petitioner did not establish that the State courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

Claim Three: Trial court's error in denying a Motion for Mistrial and in denying Petitioner's Motion for a Directed Verdict.

1. Motion for a Mistrial.

Petitioner claims that a federal constitutional violation occurred when the trial court denied her motion for a mistrial after Detective Guevara testified to a controlled purchase from Petitioner despite the court's earlier granting of defendant's motion in limine.

Before trial, the trial judge ruled that the state was not to mention a controlled buy from the Petitioner. Tr. 14.  Despite the court's ruling, during the trial, the following colloquy occurred:

Prosecutor: "What type of things were you looking for?"

Detective Guevara: "Well, it was - we were there pursuant to a controlled purchase of crack cocaine or similar narcotics."

Tr. 153. Petitioner's attorney immediately moved for a mistrial, which was denied. The trial judge took a brief recess, after which Detective Guevara continued his testimony. Tr. 154. No limiting instruction was given, and it is not clear from the record whether one was requested.  No further mention of the controlled purchase was made throughout the remainder of the trial. The New Mexico Court of Appeals found no abuse of discretion in denying Petitioner's motion for a mistrial

because it found that the main information conveyed to the jurors was not about a controlled purchase but about the crack cocaine that was subject of the search; Detective Guevara had not yet testified about how a controlled purchase works and that testimony occurred after a recess in the course of Detective Guevara's discussion of the various types of enforcement activities he participated in; no attention was drawn to the reference to a controlled buy other than the fact that defense counsel asked to approach the bench; the judge simply called a brief recess without giving the jury any indication of what the bench conference had been about; and there was ample other evidence of guilt. RP 182-183.

In order to obtain relief on this ground, Petitioner must show that the reference to the controlled purchase "was so prejudicial in the context of the proceedings as a whole that she was deprived of the fundamental fairness essential to the concept of due process." *Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir. 1989) (citations omitted). If not, the claim is governed by state law and is not cognizable in a federal habeas proceeding. *Estelle v. McGuire,* 502 U.S. at 67.

For the reasons stated by the New Mexico Court of Appeals, *supra,* together with the entire proceedings and the strength of the evidence against Petitioner discussed, *supra,* the Court finds that the testimony regarding the controlled purchase did not have such an effect upon the jury's verdict that the trial was rendered fundamentally unfair.[4] *See U.S. v. Clair,* 934 F.2d 943, 946 (8th Cir. 1991) (error must be examined in light of the weight of evidence produced at trial). Accordingly, it cannot be said that the state court proceedings on this matter were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

---

[4]The Court further notes that Detective Guevara's testimony did not specifically indicate that the controlled purchase was from Petitioner.

11

2. <u>Motion for a Directed Verdict</u>.

      It appears that Petitioner is arguing that the evidence against her was not sufficient to prove that she intended to distribute cocaine, and, therefore, her Motion for a Directed Verdict should have been granted. In reviewing a federal habeas claim for sufficiency of the evidence to convict, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Valdez v. Bravo,* 373 F.3d 1093 (10th Cir. 2004).

      To convict a defendant of Trafficking by Possession with Intent to Distribute (Cocaine), the state must prove that the Defendant had cocaine in her possession; that the Defendant knew it was cocaine or believed it to be cocaine; and that the Defendant intended to transfer it to another. RP 71. Because Petitioner admitted that she had cocaine and knew it was cocaine, the only issue for the jury was whether she had intended to transfer it to another. Tr. 34, 99.  The evidence against Petitioner regarding intent to distribute is discussed in detail in Claim Two, *supra*, which includes, *inter alia,* the amount of cocaine in Petitioner's possession, the cash in her residence, the "drug wallet," the lack of any drug paraphernalia in her residence, and the testimony of the State's expert.

      Viewing this evidence in the light most favorable to the prosecution, this Court concludes that a rational trier of fact could have concluded that Petitioner intended to transfer the cocaine to another. Petitioner's argument in this regard is not well taken, and it should be denied.

<u>Claim Four: Prosecutorial Misconduct.</u>

      Petitioner claims that the State's cumulative errors regarding prosecutorial misconduct, discussed, *infra,* prevented her from receiving a fair trial.

      The law is clear that the "cumulative effect of two or more individually harmless errors has

the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin,* 306 F.3d 982, 992 (10th Cir. 2002) (quoting *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990). A cumulative-error analysis aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless. *United States v. Toles,* 297 F.3d 959, 972 (10th Cir. 2002) (citation omitted). Cumulative error analysis is an extension of harmless error, and it utilizes the same inquiry as for individual error, which focuses on the underlying fairness of the trial. *Darks v. Mullin,* 327 F.3d 1001, 1018 (10th Cir. 2003) (citations omitted). "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

Petitioner claims that the following alleged errors in the aggregate prevented her from receiving a fair trial and denied her due process.

1.  The State failed to have a valid notary on the petition for commencement of trial.

Petitioner claims that the notary attached as verification for the petition for commencement of trial was invalid, and, consequently, the State proceeded to trial beyond the six-month deadline on a illegal document, and the State was, therefore, without jurisdiction to prosecute Petitioner.

Petitioner fails to explain how the notary was invalid; however, the only possible issue the Court sees is that the verification shows that the notary's commission expired prior to the date of her signature. RP 51.

2.  The State failed to file a timely certificate of disclosure.

Petitioner claims that the state failed to file a Certificate of Disclosure within ten days after the arraignment on July 18, 2005.  The Certificate was filed on August 9, 2005.

3. State failed to file a supplemental certificate when the money taken from Petitioner's residence

13

<u>was returned to her.</u>

Petitioner contends that because the state failed to file a supplemental certificate when the money taken from her residence was released back to her eight months prior to trial and one month prior to the Grand Jury hearing, it did not possess sufficient evidence to proceed to trial for a charge of trafficking by possession with intent to distribute. Petitioner believes that the fact the money taken from her residence was returned to her was vital to her case and that it was deliberately suppressed which constitutes a denial of due process. Petitioner's contention, however, ignores the following testimony of Detective Guevara:

Prosecutor: Does it [cash] often get returned to the defendants?

Detective Guevara: Yes, it does, frequently.

Prosecutor: Why is that?

Detective Guevara: Double jeopardy issues.

Tr. 169. Petitioner does not provide the Court with any facts or argument to refute the Detective's testimony.

<u>4.  The Affidavit for the Search Warrant did not have the proper location.</u>

Petitioner claims that the affidavit for the search warrant listed an incorrect location as to where the incident occurred and did not reference the actual location where the warrant was actually served.

<u>5.  The controlled substance was not weighed at the crime scene.</u>

Petitioner argues that because the cocaine was not weighed at the crime scene, it allowed for discrepancies.  Petitioner does not provide the court with any law or otherwise requiring such action. Furthermore, and perhaps more importantly, this Court cannot find where Petitioner ever disputed the amount of crack cocaine in her possession.

14

6.  The State violated Petitioner's right to a fair trial under *Batson.*

      Petitioner is Afro-American, and the jury had no Afro-Americans on it. Petitioner uses these facts to contend that the State violated her right to a fair trial under *Batson v. Kentucky,* 476 U.S. 79 (1986).  Petitioner, however, misreads *Batson* and its applicability to her case.  In *Batson*, the United States Supreme Court held, *inter alia*, that the Equal Protection Clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant. *Id.* In the present case, there were no Afro-Americans on the panel; therefore, no Afro-Americans were purposefully excluded by the prosecutor, and *Batson* does not apply. The Court finds that the State did not violate Petitioner's right to a fair trial under *Batson,* and, accordingly, there is no error in connection with this claim.

7.  State provided a witness list one week before trial.

      Petitioner contends that the state violated N.M. Rule 5-201 by providing its witness list one week prior to trial and such action violated her due process rights.

      Petitioner additionally alleges the following errors: (8) police reports have different dates from the original offense dates and the supplemental report date has different case numbers; (9) police reports disclose varying amounts of currency changes; (10) the evidence log sheet has no record of the crime scene photos that were submitted at trial; and (11) no evidence tag for the monetary evidence used to prove intent to distribute was submitted with the exhibit.

      As discussed, *supra,* this Court finds that there is no error in connection with Petitioner's *Batson* claim outlined in her sixth claim. Regarding Petitioner's other ten claims, this Court finds that they are generally vague and conclusory, lacking in both facts and law. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (conclusory allegations alone, without supporting factual

averments, are insufficient to state a valid claim); *see also Ruark v. Gunter,* 958 F.2d 318, 319 (10th Cir. 1992) ("[N]aked allegations are not cognizable under 28 U.S.C. § 2254"). However, for purposes of the cumulative error analysis, this Court will assume, arguendo, that all ten claims constitute harmless error. Even operating under this assumption, this Court finds that the cumulative effect of any prosecutorial misconduct did not deprive Petitioner of a fair trial or due process. Having reviewed the entire record, the transcripts, and the briefing, this Court concludes that any harmless error, even when accumulated, did not have a sufficient prejudicial effect to deny Petitioner a fair trial or due process. The alleged errors were generally fairly minor technical violations. As discussed in detail, *supra,* evidence supporting Petitioner's guilt was strong and remedying any or all of the deficiencies Petitioner alleges would not have changed the outcome of her trial. Petitioner's claim is without merit, and habeas relief on this ground should, therefore, be denied.

Claim Five: Ineffective Assistance of Counsel.

Employing a liberal reading of the Petition, Petitioner appears to contend that she was denied constitutionally effective assistance of counsel for a multitude of reasons that will be outlined and discussed, *infra*. The merits of an ineffective assistance of counsel claim are squarely governed by *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland,* the Supreme Court devised a two-step inquiry to determine whether a lawyer's performance deprived an accused of her Sixth Amendment right to assistance of counsel. *Id.* at 686-687. In order to establish an ineffective assistance claim, Petitioner must show that (1) her attorney's performance fell below an objective standard of reasonableness, and that (2) she was prejudiced by her attorney's deficient performance. *Id.* at 687-688.

To establish unreasonable performance, Petitioner must show that her attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Six

16

Amendment," *Williams v. Taylor,* 529 U.S. 362, 390 (2000) (quoting *Strickland,* 466 U.S. at 687),

and that her legal representation "fell below an objective standard of reasonableness." *Strickland,*

466 U.S. at 688.  In showing that counsel's representation was objectively unreasonable, Petitioner

must overcome "the strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Strickland,* 466 U.S. at 688-689; *see Bullock v. Carver,* 297

F.3d 1036, 1046-1047 (10th Cir. 2002) (discussing strong presumption of reasonableness). To

establish prejudice, Petitioner must show a reasonable probability, sufficient to undermine

confidence in the outcome, that the result of the proceeding would have been different but for her

attorney's alleged unprofessional errors. *Strickland,* 466 U.S. at 694.  The prejudice component

focuses on the question of whether counsel's performance renders the result of the trial unreliable

or the proceeding fundamentally unfair. *Williams v. Taylor,* 529 U.S. 362, 393 fn. 17 (2000) (citation

omitted); *Kimmelman v. Morrison,* 477 U.S. 365, 374, 393(1986).  It is entirely appropriate for a

habeas court to analyze the prejudice prong first and exclusively. *See, e.g., Scoggin v. Kaiser,* 186

F.3d 1203, 1207 (10th Cir. 1999).

The state court rejected Petitioner's following claims of ineffective assistance of counsel in

both of her state habeas Petitions.[5]  This Court must evaluate whether by so doing, the state court

---

[5]In the Order denying Petitioner's First Petition for State Habeas, the trial court found the following: "Through a series of factual allegations, the petitioner requests that her conviction should be reversed for ineffective assistance of counsel.  Mr. Aspenwall was faced with considerable evidence against his client and presented a colorable defense in spite of the evidence.  He challenged the evidence against her and presented a defense.  Mr. Aspenwall's assistance fell well within that which is required of the effective lawyer." RP 318.  In the Order denying Petitioner's Second Petition for State Habeas, the trial court found the following: "Petitioner alleges ineffective assistance of counsel.  Counsel at trial did an excellent job in the face of facts squarely against the defendant.  Standard of practice was well within that required by trial counsel. Petitioner was convicted by the facts not because of ineffective assistance of counsel." RP 347.

acted contrary to or unreasonably applied the clearly established federal law set forth, *supra.*

1.  Defense counsel failed in his duty to ask that the testimony of Detective Guevara regarding the
controlled purchase be stricken from the record or to request curative instructions or sanctions.

      Petitioner alleges that her counsel was ineffective because after Detective Guevara testified

about the controlled buy, her counsel did not move for the testimony to be stricken nor did he

request curative instructions or sanctions. Because this Court finds, *supra,* that Petitioner's Claim

Three fails because Detective Guevara's testimony about the controlled purchase did not render her

trial fundamentally unfair, Petitioner cannot show the requisite prejudice under her Ineffective

Assistance of Counsel claim for this issue, and Petitioner's claim should be denied.

2.  Petitioner was denied a meaningful opportunity to present certain witnesses because of counsel's
late disclosure of the witnesses.[6]

      Petitioner contends that because her counsel untimely disclosed her two witnesses who

would testify that 6.3 grams of cocaine was consistent with personal use, she was denied her right

to present these witnesses. Because this Court finds, *supra,* that Petitioner's Claim Two fails because

the exclusion of Petitioner's witnesses did not deny Petitioner's right to a fair trial, Petitioner can

show no prejudice under her Ineffective Assistance of Counsel claim for this issue, and it should be

denied.

3.  Counsel did not provide expert witnesses.

      Although Petitioner claims that her counsel was ineffective because he did not provide expert

witnesses, Petitioner fails to identify these witnesses and provides no specifics as to how their

testimony would have altered the outcome of her trial. Although a *pro se* litigant's pleadings are

liberally construed, Petitioner is not relieved of the burden of alleging sufficient facts on which a

---

      [6]The trial court also found that the witnesses were excluded because they did not qualify
as experts and because their personal use and practice was not relevant to the case. Tr. 210-211.

recognized legal claim can be based and conclusory allegations will not suffice. *See Hall v. Bellmon,* 935 F.2d at 1110; *Ruark v. Gunter,* 958 F.2d at 319. Because this ineffective assistance of counsel claim consists entirely of a conclusory and unsupported allegation, it should be denied.

4.  Counsel failed to present evidence that APD returned the cash in question to Petitioner on August 31, 2005.

Petitioner believes that the fact that APD returned the cash taken from her home to her prior to trial was crucial to her case and if presented, would "more than likely discredit the state's theory of intent to distribute," and she would have been convicted of simple possession rather than trafficking. [Doc. 1].  Petitioner once again ignores Detective Guevara's testimony that cash is frequently returned to defendants because of double jeopardy issues, Tr. 169, and she does not refute this testimony.  Additionally, Petitioner's conclusory allegation that the presentation of such evidence would result in a lesser conviction does not meet the required legal standard. *See Hall v. Bellmon,* 935 F.2d at 1110; *Ruark v. Gunter,* 958 F.2d at 319.  Petitioner's claim has no merit and it should be denied.

5.  Counsel failed to submit as exhibits the existence of defendant's payroll stubs and tax returns to establish the source of the cash in her possession.

Petitioner claims that her attorney was ineffective by not submitting her payroll stubs and tax returns as exhibits to prove the source of the cash taken by APD. Once again, Petitioner has made a conclusory allegation with no supporting factual averments and does not allege or explain how the submission of such evidence would change the outcome of the trial.  However, even if she did, the transcript of the trial shows that although the payroll stubs may not have been admitted into evidence, each pay stub was discussed in detail, and it appears as if the Prosecutor and the Petitioner were referring to the actual pay stubs. Tr. 201-204. Regarding taxes, Petitioner testified that she had received $585 from tax refunds.  Tr. 206. The reason why the actual tax forms were not submitted

as evidence could be that none of them were signed, and there was no documentation to show that they had been filed. Tr. 3-7. Petitioner's claim fails and it should be dismissed.

6. Counsel failed to file for a dismissal of charges as allowed by NM Rule 5-604 for an invalid petition of commencement of trial.

Petitioner alleges that her attorney should have filed for dismissal of her charges because the petition for commencement of trial was invalid. Petitioner fails to provide the Court with facts showing how the petition of commencement of trial was invalid; however, if Petitioner is referring to Docket 1-2, as discussed, *supra,* the only possible issue this Court sees is that the Verification shows that the notary's commission expired prior to the date of her signature. RP 51. Petitioner also fails to provide any facts showing how her allegation would lead to a dismissal of the charges; however, this Court takes judicial notice of the fact that such a harmless error would not lead to a dismissal. Petitioner has not met her burden, and her claim should be denied.

7. Counsel failed to object to the State's untimely introduction of witnesses.

Although Petitioner contends that her attorney should have objected to the State's untimely disclosure of witnesses, as for No. 3, *supra,* Petitioner again fails to identify these witnesses and provides no specifics as to how her counsel's failure to object caused her prejudice. Accordingly, this claim should be denied.

8. Counsel failed to object to state's submission of monetary evidence without evidence tags.

Petitioners alleges that her counsel was ineffective because he failed to object to the state's submission of monetary evidence without evidence tags. However, Petitioner fails to allege or show how under the *Strickland* prejudice prong, the result of the proceeding would have been different but for this alleged error by her attorney; therefore, this claim should be denied.

9. Counsel "fails to preserve issue for further review."

20

Although Petitioner argues that her counsel did not preserve an issue for further review, she does not identify which issue counsel failed to preserve or explain how the outcome of the trial would have been different.  As discussed, *supra*, Petitioner must allege sufficient facts on which a recognized legal claim can be based and conclusory allegations are insufficient. Petitioner must further prove prejudice. Petitioner has failed to do either, and her claim should be dismissed.

10. Counsel failed to thoroughly cross-examine Detective Sinclair regarding the release of monetary evidence back to Petitioner.  Counsel did not object to the introduction of evidence that the State did not possess so the defense could not raise the issue on appeal.

As in No. 4, *supra,* Petitioner raises the fact that the cash taken from her residence was returned to her. Again, her contention ignores Detective Guevara's testimony that cash is frequently returned because of double jeopardy issues.  Tr. 169.  Additionally, Petitioner makes no allegation or provides any facts as to how counsel's alleged failures would change the outcome of the trial in order to satisfy the second prong of *Strickland.*

11. Counsel failed to reveal the multitude of errors within APD police reports, evidence logs, search warrants, evidence collection, and handling procedures.

Petitioner contends that her attorney failed to reveal errors within certain APD documents and procedures; however, it is not completely clear to which errors Petitioner is referring.  In her Answer, she refers to Document 1, Ex. - 3 p. 12-28. [Doc. 20]. The Court cannot find this Exhibit, and the Exhibits attached to Document 1 are marked alphabetically and not numerically.  Under a liberal reading of the Petition, however, this Court believes that the errors Petitioner is referring to are the errors outlined in her claim for prosecutorial misconduct.

Before assessing whether Petitioner's defense attorney was constitutionally ineffective for failing to object to what appears to be prosecutorial misconduct, the Court must first determine whether the prosecution committed misconduct.  *See Washington v. Hofbauer,* 228 F.3d 689, 699

(6th Cir. 2000).  As the Court has already found, *supra,* Petitioner's prosecutorial misconduct claim has no merit.  Therefore, this Court finds that this ineffective assistance of counsel claim has no merit.

12.  Counsel failed to file for dismissal of the charges under Rule 5-604 when the State did not proceed to trial on a timely basis or file for a continuance.

Petitioner contends that her counsel failed to file for dismissal when the State did not proceed to trial timely or file for a continuance. Petitioner's claim is without merit as the state court granted an extension of time until April 18, 2006 for the commencement of the trial. RP 53.  The trial was held on February 20 and 21, 2006, well within the time limit. RP 54.

13. Counsel failed to raise a "*Batson*" claim.

As discussed in detail, *supra*, Petitioner did not have a *Batson* claim that could be properly raised, and, accordingly, Petitioner's counsel was not ineffective in not raising such a claim.

Petitioner has failed to meet the requirements of *Strickland*, and, therefore, this Court recommends that habeas corpus relief be denied on Petitioner's claim of ineffective assistance of counsel.

**RECOMMENDED DISPOSITION**

For the foregoing reasons, this Court recommends that Respondent's Motion to Dismiss be granted and that the Petition for Writ of Habeas Corpus be denied on the merits and dismissed with prejudice.

**NOTIFICATION**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §636(b)(1).**

22

A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.

_____

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**